1   KAMALA D. HARRIS, State Bar No. 146672
    Attorney General of California
2   BRIAN G. SMILEY, State Bar No. 180658
    Supervising Deputy Attorney General
3   HEATHER S. GIMLE, State Bar No. 203849
    Deputy Attorney General
4      1300 I Street, Suite 125
       P.O. Box 944255
5      Sacramento, CA 94244-2550
       Telephone:  (916) 324-5264
6      Fax:  (916) 324-2960
       E-mail:  Heather.Gimle@doj.ca.gov
7   *Attorneys for Respondent*

8                   IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13  **BRENT JEFFREY LAMBERT,**            2:10-cv-2587 DAD

14                          Petitioner,   **ANSWER TO PETITION FOR WRIT OF
                                          HABEAS CORPUS**
15            **v.**

16  **MICHAEL MARTEL, Warden,**

17                          Respondent.

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

Memorandum of points and authorities in support of answer to petition for writ of habeas
corpus ............................................................................................................................ 4

4

        A.     Statement of facts and case ........................................................ 4

5

        B.     Governing AEDPA standards ..................................................... 8

6

        C.     California habeas standards........................................................ 12

Argument ..................................................................................................................... 16

7

    I.     The state court's rejection of the admission of evidence claim is not shown
to be objectively unreasonable ......................................................................... 16

8

        A.     The state court's ruling............................................................... 17

9

        B.     Analysis...................................................................................... 20

10

    II.    The state court rejection of the ineffective assistance of counsel claim is
not shown to be objectively unreasonable .......................................................... 22

11

    III.   The state court rejection of the ineffective assistance of counsel claim is
not shown to be objectively unreasonable .......................................................... 27

12

    IV.   The state court rejection of the prosecutorial misconduct claim is not
shown to be objectively unreasonable ................................................................ 30

13

        A.     State court's ruling..................................................................... 30

14

        B.     Analysis...................................................................................... 32

15

    V.     The state court rejection of the fair trial claim is not shown to be
objectively unreasonable.................................................................................... 34

16

        A.     The state court's ruling............................................................... 34

17

        B.     Analysis...................................................................................... 36

18

Conclusion ................................................................................................................... 37

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

Alcala v. Woodford
  334 F.3d 862 (9th Cir. 2003)............................................................................. 29

Atkins v. Singletary
  965 F.2d 952 (11th Cir. 1992)............................................................................ 24

Barefoot v. Estelle
  463 U.S. 880 (1983)............................................................................................ 2

Barrett v. United States
  965 F.2d 1184 (1st Cir. 1992) ........................................................................... 14

Beard v. Banks
  542 U.S. 406 (2004)..................................................................................... 2, 12

Bell v. Cone
  535 U.S. 685 (2002)......................................................................................... 12

Berghuis v. Smith
  130 S.Ct. 1382 (2010)........................................................................................ 9

Blackledge v. Allison
  431 U.S. 63 (1977) .......................................................................................... 16

Brecht v. Abrahamson
  507 U.S. 619 (1993)......................................................................................... 12

Carey v. Musladin
  549 U.S. 70 (2006)............................................................................................. 9

Chandler v. United States
  218 F.3d 1305 ........................................................................................... 23, 24

Coleman v. Thompson
  501 U.S. 722 (1991)......................................................................................... 21

Colorado v. Connelly
  479 U.S. 157 (1986)......................................................................................... 21

Crater v. Galaza
  491 F.3d 1119 (9th Cir. 2007)........................................................................... 12

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Cupp v. Naughten*
   414 U.S. 141 (1973) ........................................................................... 34

*Curl v. Superior Court*
   51 Cal.3d 1292 (1990) ...................................................................... 13

*Dalli v. United States*
   491 F.2d 758 (2d Cir. 1974) ............................................................. 14

*Darden v. Wainwright*
   477 U.S. 168 (1986) ........................................................................... 33

*Davis v. Woodford*
   384 F.3d 628 (9th Cir. 2004) ........................................................... 29

*Donelly v. DeChristoforo*
   416 U.S. 637 (1974) ........................................................................... 33

*Early v. Packer*
   537 U.S. 3 (2002) ............................................................................... 10

*Edwards v. Carpenter*
   529 U.S. 446 (2000) ....................................................................... 1, 21

*Estelle v. McGuire*
   502 U.S. 62 (1991) ............................................................................. 21

*Felker v. Turpin*
   518 U. S. 651 (1996) .......................................................................... 10

*Fry v. Pliler*
   551 U.S. 112 (2007) ........................................................................ 2, 12

*Garrison v. McCarthy*
   653 F.2d 374 (9th Cir. 1981) ........................................................... 21

*Gray v. Netherland*
   518 U.S. 152 (1996) ........................................................................... 33

*Harrington v. Richter*
   131 S.Ct. 770 (2011) .................................................................. passim

*Holland v. Jackson*
   542 U.S. 649 (2004) ..................................................................... 12, 29

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Holley v. Yarborough*
  568 F.3d 1091 (9th Cir. 2009) ............................................................. 21

*Holmes v. South Carolina*
  547 U.S. 319, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) ...................... 37

*In re Clark*
  5 Cal.4th 750 (1993) ............................................................. 13, 16

*In re Cordero*
  46 Cal.3d 161 (1988) ............................................................. 14

*In re Hardy*
  41 Cal.4th 977 (2007) ............................................................. 16

*In re Harris*
  5 Cal.4th 813 (1993) ............................................................. 13

*In re Hawthorne*
  35 Cal.4th 40 (2005) ............................................................. 14

*In re Martinez*
  46 Cal.4th 945 (2009) ............................................................. 13

*In re Morgan*
  50 Cal.4th 932 (2010) ............................................................. 16

*Kimmelman v. Morrison*
  477 U.S. 365 (1986) ............................................................. 23, 24

*Knowles v. Mirzayance*
  129 S.Ct. 1411 (2009) ............................................... 9, 25, 26, 33

*LaGrand v. Stewart*
  133 F.3d 1253 (9th Cir. 1998) ............................................................. 24

*Marks v. Superior Court*
  27 Cal.4th 176 (2002) ............................................................. 13

*McCleery v. City of Bakersfield*
  170 Cal.App.3d 1059 (1985) ............................................................. 15

*McMann v. Richardson*
  397 U.S. 759 (1970) ............................................................. 24

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*Melendez v. Warden*
   288 F.3d 1120 (9th Cir. 2002) .......................................................................... 21

*Morris v. State of California*
   966 F.2d 448 (9th Cir. 1991) ............................................................................ 24

*Moses v. Payne*
   555 F.3d 742 (9th Cir. 2009) ............................................................................ 37

*Murray v. Carrier*
   477 U.S. 478 (1986) .......................................................................................... 21

*Nix v. Whiteside*
   475 U.S. 157 (1986) .......................................................................................... 25

*Parker v. North Carolina*
   397 U.S. 790 (1970) .......................................................................................... 24

*People v. Brady*
   129 Cal.App.4th 1314 (2005) ........................................................................... 15

*People v. Duvall*
   9 Cal.4th 464 (1995) .................................................................................... 13, 14

*People v. Gonzalez*
   51 Cal.3d 1179 (1990) ...................................................................................... 15

*People v. Karis*
   46 Cal.4th 612 (1988) ....................................................................................... 14

*People v. Lambert*
   2009 Cal. App. ............................................................................................... 1, 3

*People v. Romero*
   8 Cal.4th 728 (1994)) ....................................................................................... 16

*People v. Saunders*
   5 Cal.4th 580 (1993) ........................................................................................... 1

*People v. Schmies*
   44 Cal.App.4th 38 (1996) ................................................................................. 15

*People v. Sperl*
   54 Cal.App.3d 640 (1976) ................................................................................ 15

1

**TABLE OF AUTHORITIES**
(continued)

2

<u>Page</u>

3

*People v. Stoll*
   49 Cal.3d 1136 (1989) ................................................................................. 27

4

*People v. Strickland*
   (1974) 11 Cal.3d 946 ........................................................................... passim

5

6

*Perez v. Rosario*
   459 F.3d 943 (9th Cir. 2006) ....................................................................... 16

7

*Petition of Brabson*
   167 F.Supp 619 (D.N.Y. 1958) .................................................................... 14

8

9

*Premo v. Moore*
   131 S.Ct. 733 (2011) ............................................................................... 9, 24

10

*Renico v. Lett*
   130 S.Ct. 1855 (2010) ............................................................................... 8, 9

11

12

*Rice v. Collins*
   546 U.S. 333 (2006) .................................................................................... 10

13

14

*Rich v. Calderon*
   187 F.3d 1064 (9th Cir. 1999) ..................................................................... 15

15

*Roe v. Flores-Ortega*
   528 U.S. 470 (2000) ............................................................................... 23, 25

16

17

*Strickland v. Washington*
   466 U.S. 688 (1984) ........................................................................ 23, 24, 27

18

*Schriro v. Landrigan*
   550 U.S. 465 (2007) .................................................................................... 12

19

20

*Schroeder v. McDonald*
   55 F.3d 454 (9th Cir. 1995) ......................................................................... 14

21

22

*Teague v. Lane*
   489 U.S. 288 (1989) ...................................................................................... 2

23

24

*Tuilaepa v. California*
   512 U.S. 967 (1994) .................................................................................... 27

25

26

*Waddington v. Sarausad*
   129 S.Ct. 823 (2009) ..................................................................................... 8

27

28

## TABLE OF AUTHORITIES
### (continued)

Page

*Wainwright v. Sykes*
433 U.S. 72....................................................................................................................... 21, 33, 36

*Weiss v. Cooley*
230 F.3d 1027 (7th Cir. 2000)........................................................................................... 14

*Williams v. Taylor*
529 U. S. 362 (2000)....................................................................................................... 9, 12, 13

*Wong v. Belmontes*
130 S.Ct. 383 (2009)........................................................................................................... 30

*Yarborough v. Alvarado*
541 U. S. 652 (2004)........................................................................................................ 9, 10, 33

STATUTES

28 U.S.C. § 2244 ................................................................................................................. 10

28 U.S.C. § 2244(d)(1)(A) ................................................................................................... 1

28 U.S.C. § 2254(a) .......................................................................................................... 11, 21

28 U.S.C. § 2254(b)(1)........................................................................................................ 1

28 U.S.C. § 2254(b)(2)........................................................................................................ 1

28 U.S.C. § 2254(d) ....................................................................................................... passim

28 U.S.C.  § 2254(e) .......................................................................................................... 11

28 U.S.C. § 2254(e)(1) ...................................................................................................... 11

28 U.S.C. § 2254(e)(2) ...................................................................................................... 12

Antiterrorism and Effective Death Penalty Act of 1996 ................................................. 2

California Evidence Code § 300 ....................................................................................... 14

California Evidence Code § 403(a)(2) ............................................................................. 14

California Evidence Code § 702 ....................................................................................... 14

California Penal Code § 288(a)............................................................................................ 1

California Penal Code § 667.61(e)(5) ................................................................................ 1

# TABLE OF AUTHORITIES
**(continued)**

**Page**

California Penal Code § 1137 ................................................................................ 26

Evidence Code § 352 ............................................................................................ 37

Evidence Code § 354, subdivision (a)................................................................... 15

Evidence Code § 1360 .......................................................................................... 18

COURT RULES

California Rules of Court 8.500(c)(2)...................................................................... 4

Federal Rules of Evidence 602 ............................................................................. 15

1    Pursuant to the order of this Court, Respondent answers the Petition for Writ of Habeas

2    Corpus (the "Petition") as follows:

3                                        I

4    Respondent, as Warden of Mule Creek State Prison, has lawful custody of Petitioner, a

5    prisoner, pursuant to the July 13, 2007, judgment of the Superior Court of the State of California,

6    County of Sacramento, in case number 03F03703.

7                                        II

8    A jury found Petitioner guilty of six counts of lewd and lascivious acts, California Penal

9    Code § 288(a).  (2CT at 547-49.)  The jury also found that Petitioner had committed five of the

10   six offenses against multiple victims, California Penal Code § 667.61(e)(5).  (2CT at 547-49.)  On

11   July 13, 2007, the trial court sentenced Petitioner to 15 years to life in state prison.  (3CT at 635.)

12                                       III

13   The California Court of Appeal affirmed the judgment in an opinion, *People v. Lambert*,

14   2009 Cal. App. Unpub. LEXIS 5512 (2009) (Lod. Doc. 7 and Exhibit 1 hereto), and the

15   California Supreme Court denied review.[1]   Thereafter, the California Supreme Court denied a

16   petition for writ of habeas corpus.

17                                       IV

18   The Petition does not appear untimely filed.  28 U.S.C. § 2244(d)(1)(A).

19                                        V

20    Petitioner has the burden of demonstrating exhaustion, and Respondent relieves Petitioner

21   of that burden only insofar as the claims are understood and discussed herein; otherwise, the

22   claims are barred for lack of exhaustion, 28 U.S.C. § 2254(b)(1), and may be only considered for

23   the purpose of denying them, 28 U.S.C. § 2254(b)(2).  Any such unexhausted claims are barred

24   also as procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  This includes

25

26   _____

27   [1] *See People v. Saunders*, 5 Cal.4th 580, 592 n.8 (1993) ("We recently reaffirmed 'the
     well-established rule in this state that a denial of a petition for review is not an expression of the
     opinion of the Supreme Court on the merits of the case.  [Citations.]' ").

28

1

1  claims whose presentation was not fairly made to the state court due to failure to comply with

2  state rules of presentation on habeas.

3  VI

4  On claims fairly presented to a state court, Petitioner fails to prove their rejection either was

5  not on the merits, or the merits rejection was objectively unreasonable.  28 U.S.C. § 2254(d).

6  VII

7  Separately, for any claim fairly presented in state court, the existence of a constitutional

8  violation, rendering the resulting custody illegal, would not have been "apparent to all reasonable

9  jurists" based on the law extant at the time the conviction became final on direct appeal.  *Beard v.*

10  *Banks*, 542 U.S. 406, 413 (2004); *Teague v. Lane*, 489 U.S. 288 (1989).

11  VIII

12  Claims 1 and 4 are procedurally barred, as the California Court of Appeal determined that

13  the claims were forfeited for lack of contemporaneous objection in the trial court.  (Lod. Doc. 7,

14  Exhibit 1.)

15  IX

16  Claims 2 and 3 are procedurally barred, as the California Supreme Court denied Petitioner's

17  state habeas petition as untimely.  (Lod. Doc. 11.)

18  X

19  Petitioner thus shows no lawful basis to issue the writ under a system of review already

20  "secondary" and "limited" prior to 1996, *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983), and now

21  further "limited rather than expanded" under the Antiterrorism and Effective Death Penalty Act of

22  1996 (AEDPA), *Fry v. Pliler*, 551 U.S. 112, 119 (2007), and the Petition must be denied.

23  XI

24  The state appeal record consists of the Clerk's Transcript on appeal in three consecutively-

25  paginated volumes (CT), the Clerk's Supplemental Transcript in one volume (CST), the

26  Reporter's Transcript on appeal in four consecutively-paginated volumes (RT), and the

27  Reporter's Supplemental Transcript on appeal in two consecutively-paginated volumes (RST).

28

2

1   These documents, as well as the following documents, are being lodged with this Court with the

2   filing of Respondent's answer:

3       Lodged document 1 . . . Petitioner's Opening Brief

4       Lodged document 2 . . . Respondent's Brief

5       Lodged document 3 . . . Petitioner's Reply Brief

6       Lodged document 4 . . . Petitioner's Supplemental Brief

7       Lodged document 5 . . . Respondent's Supplemental Brief

8       Lodged document 6 . . . Petitioner's Supplemental Reply Brief

9       Lodged document 7 . . . Opinion of the California Court of Appeal, Third Appellate

10  District, in *People v. Lambert*, case number C056328

11      Lodged document 8 . . . Petitioner's Petition for Review

12      Lodged document 9 . . . Order denying review in *People v. Lambert*, California Supreme

13  Court case number S174781

14      Lodged document 10 . . . Petitioner's Petition for Writ of Habeas Corpus, filed in the

15  California Supreme Court

16      Lodged document 11 . . . Order denying the petition in *In re Brent Jeffrey Lambert*,

17  California Supreme Court case number S176499.

18
19  Dated:  February 14, 2011                    Respectfully Submitted,

20                                               KAMALA D. HARRIS
                                                 Attorney General of California
21                                               BRIAN G. SMILEY
                                                 Supervising Deputy Attorney General

22

23

24                                               /s/ *Heather S. Gimle*
                                                 HEATHER S. GIMLE
25                                               Deputy Attorney General
                                                 *Attorneys for Respondent*

26

27

28

1

2
### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS

3

4
**A.    Statement of Facts and Case[2]**

5
### FACTS

6
A.  *Report of Abuse*

7
C. is the mother of A. and B. A. was eight years old at the time of the crimes in 2003

8
and 12 years old at the time of trial in 2007.  B. was five years old at the time of the crimes and nine years old at the time of trial.  C. also has two other children.  C. met defendant when they were teenagers and dated for one year before she joined the

9
military in 1991.  She married another man, but in October 1996, after she had broken up with her husband, she moved in with defendant in another state.

10

11
In 1999, C. and defendant broke up for several months.  During that time, C. and the children lived with a woman and a man whom the children called Grandpa Jim.  On

12
several occasions when Grandpa Jim was alone with the children, he took A. to his bedroom and molested her.  A. was six years old when this was reported to the police.

13
Around August 1999, C. and defendant reunited and lived together again.

14
In March 2002, defendant, C., and the children moved to the Sacramento area.

15
In March 2003, B. who was five years old at the time, approached C. and said, "Don't worry mommy, I know daddy and I are not having sex."  C. asked her what she

16
meant, and B. responded that she wasn't supposed to talk about it and didn't want A. to know that she had said anything.  C. called A. into the room and asked her what B. meant by saying that she and defendant were not having sex.  A. became upset at B.

17
and yelled at her for telling their mother.  A. told C. that, while C. was at work, defendant had been touching A. and B. sexually.

18

19
C. waited more than one week before going to the police on March 16, 2003, with the information she received from A. and B.  In the meantime, she took money out of a

20
joint account with defendant and put it into her own name so that she would be able to pay rent and bills in the event defendant were to flee.  When C. finally went to the

21
police, she lied about when the victims had told her about the abuse.

22
Deputy Michael Liston of the Sacramento County Sheriff's Department went to the home to investigate the abuse report.  He interviewed A. and B. together in the

23
kitchen to substantiate that a crime had occurred.  The conversation lasted 10 or 15 minutes, during which the victims disclosed sexual abuse by defendant.

24
[2] The statement of facts is taken from the opinion by the California Court of Appeal, Third

25
Appellate District.  (Lod. Doc. 7 [unpublished opinion in case number C056328, filed July 9, 2009].)  Petitioner did not file a petition for rehearing in the state courts, which under state law

26
means that he accepted as accurate the factual summary by the California Court of Appeal.  See Cal.R.Ct 8.500(c)(2) (the California Supreme Court "normally will accept the Court of Appeal's

27
opinion's statement of the issues and facts unless a party has called the Court of Appeal's attention to any alleged omission or misstatement of an issue or fact in a petition for rehearing").  Moreover, Petitioner had not alleged any error in the state court's factual findings.

28

4

A. told Deputy Liston that defendant would place his penis between her legs and attempt to put it in her vagina and anus, both while she faced him and while her back was to him. He would spit on his hand for lubrication. She knew it was wrong but was afraid to say anything. B. would come into the room while A. and defendant were under the covers.

B. told Deputy Liston that defendant had touched her in her "crotch" area with his "dick." Deputy Liston clarified with B. that she was talking about her vaginal area and defendant's penis.

A. and B. were interviewed separately at the Multidisciplinary Interview Center (MDIC) on April 2, 2003, 17 days after C. reported the abuse to the police.

B. *A.'s MDIC Interview*

At the time of the interview, A. was eight years old and in second grade. The interviewer established that A. knew the difference between a lie and the truth.

The interviewer asked A. if anything had happened to her that was not "okay." A. responded that defendant "did a bad thing to me and my sister." A. explained that she knew something bad had happened to B. because B. had told her.

During the interview, A. said that what defendant had done to her occurred once in her bedroom and all of the other times in his room. Defendant molested her when she was five and six years old. Defendant stopped molesting her, then Grandpa Jim molested her and got arrested, then defendant started molesting her again. Defendant did not molest her during the time that Grandpa Jim was molesting her. Defendant also molested her when she was seven and eight years old.

A. described a game she would play with defendant and B., in defendant's bedroom at night, called "cats." After playing the game, defendant would put his tongue and his penis in her vagina, while using his hands to spread her legs. He would also twist her breasts with his hands. His penis was stiff and he would move back and forth. He would also spit on his hand and wipe it on his penis. A. was too scared to try to get away. B. was in the room when this happened but did not see it happen because defendant and A. were under the covers. This happened while C. was at work. Defendant threatened A. that, if she ever told anyone, he would hurt her.

A. said that defendant put his penis in her vagina 17 times and his tongue in her vagina 5 times. He twisted her breasts 16 times. About 20 times, defendant put his penis in her anus. When asked whether anything else happened with defendant, A. replied that "[n]othing else different happened." Defendant never had A. do anything to his body.

A. said that, when she was five, she told C. about the molestation because her brother saw it happen and got upset. (Later in the interview, A. said that her brother saw Grandpa Jim, not defendant, molesting her.) C. got mad at defendant and had A. stay away from him for 60 days, but she did not call the police because, in A.'s words, "it wasn't so bad the first time" and "he wasn't doing that to me very oftenly [sic]."

C. *B.'s MDIC Interview*

At the time of the MDIC interview, B. was five years old and in kindergarten. The interviewer established that B. knew the difference between a lie and the truth, and B. promised to tell the truth.

5

When the interviewer asked B. whether anything had happened to her body that was not okay, she responded that defendant "did something to my sister and me, and that was gross." He did something to her two times, once in her bed and once in defendant's bed, while C. was at work.

The time that it happened in defendant's bedroom, he put his penis in B.'s vagina. His penis was hard, and he was not moving. He stopped because he had to go to the bathroom. A. was not in the room at the time.

In B.'s bedroom, she was lying on her bed on her stomach. Defendant put his penis in her anus. His penis was hard, and he was not moving. Although B. said that something had happened only twice, she said that defendant put his penis in her anus on another occasion also. B. saw defendant molest A.

D. *The Prosecutor's Interviews of A. and B.*

The prosecutor interviewed A. and B. on May 25, 2007, which was shortly before trial and more than four years after the MDIC interviews. An investigator from the District Attorney's office observed the interview and took notes. The investigator testified concerning the interview.

A. stated that most of defendant's acts took place in the living room during the daytime. He put A. on his lap and put his penis in her anus and his fingers in her vagina. A. and B. played a game called "cats" with defendant. B. was the wild cat, and A. was the house cat. Defendant was the father cat. He had A. and B. purr while he touched them sexually. Defendant put his penis in A.'s mouth, his penis in her vagina, and his mouth on her vagina and chest. He also hit her in the face with his penis. She said that it happened several times during each week and more than once during some days. She also saw defendant molest B. three times. He made B. watch and purr while he molested A.

B. stated that defendant molested her three times, all in defendant's bedroom. They played "cats," during which they all were on the bed. They rubbed up against defendant and purred and cuddled with him. He threatened her that, if she told anyone, he would kill the entire family.

E. *A.'s Trial Testimony*

A. testified that she was 12 years old and in sixth grade at the time of trial. She demonstrated her knowledge of the difference between truth and lies.

Grandpa Jim molested A. while she lived in another state. One time, her brother saw this happening through the window. They told C. what was happening.

Defendant molested A. while she lived in California. (She moved from the state after defendant was arrested.) She did not remember how old she was or what grade she was in when defendant molested her. The molestation took place in the living room or in defendant's bedroom.

In the living room, he would sit on a chair with his pants down and a blanket over him. He would tell A. to sit on his lap and, when she did, he would put his penis in her anus. He did this frequently.

In defendant's bedroom, defendant would put his penis in A.'s vagina and anus and he would touch her chest. He would also put his tongue in her vagina. He made her

6

put her mouth on his penis. Defendant played "cats" with A. and B.  He would have them crawl around on the bed and purr, then he would molest A.

A. saw defendant put his penis in B.'s vagina once when he was putting her to bed. B. screamed, and defendant told her to shut up and left.  Another time, in defendant's room, A. saw defendant put his penis in B.'s vagina and anus after he had done the same thing to A.  After he finished with B, he returned to A. and put his penis in her vagina.

A. did not remember talking to the police after C. reported the molestation.  She also did not remember the MDIC interview and could not answer questions concerning that interview.

A. felt that defendant was nicer to B. than to her.  She was "quite happy for him to move out of the house."

F. *B.'s Trial Testimony*

B. testified that she was nine years old (within a month of being 10) at the time of trial.  She demonstrated her knowledge of the difference between truth and lies.

B. said that defendant sexually abused her three times.  The first incident occurred in defendant's bedroom.  Defendant put his penis in B.'s vagina and moved up, down, and sideways.  The second incident also happened in defendant's bedroom.  He put his penis in B.'s anus, while she was lying face down on the bed.  A. saw this happen.

The third and last incident also occurred in defendant's bedroom. On this occasion, defendant put his penis in B.'s vagina.  Defendant made B. stand next to the wall while he then put his penis in A.'s vagina and anus.  Finally, he put B. back on the bed and he put his penis in her anus.  He told A. and B. that, if they told anyone, he would kill them.

B. remembered her MDIC interview.  She acknowledged some discrepancies between her MDIC interview and her trial testimony and stated that "I was littler, and I didn't really know better if I should tell the truth, or just lie."  Later, she said that the discrepancies were mistakes, not lies.  She had wanted the MDIC interview to end and gave answers to move away from the topics that embarrassed her.

G. *Forensic Evidence*

An expert in evaluating children physically for signs of sexual abuse examined and took photographs of the vaginal areas of A. and B. on March 19, 2003, three days after C. reported the abuse to police.  The expert testified that a young girl's hymen may show signs if there has been sexual abuse but that it may also heal quickly after abuse and return to normal, typically within 10 to 12 days.

On the date of the examination, A.'s hymen was normal.

When B. was examined, however, the expert detected evidence of healed hymenal trauma, which supported a concern that B. had been sexually abused.  The expert concluded that the evidence was consistent with B.'s report that her vagina had been penetrated by a penis.

7

H. *Defense Case*

The defense case consisted, mainly, of three types of evidence: (1) forensic evidence, (2) evidence concerning suggestive interviewing, and (3) character evidence.

1. Forensic Evidence

The defense presented two experts on child sexual assault examinations who viewed the photographs of the examination of B. Both of them believed that the expert who conducted the examination of B. was mistaken in finding evidence of sexual abuse. One of the experts considered B.'s hymen, as seen in the photographs, to be normal. The other considered B.'s hymen to be unremarkable, consistent with a history of abuse as well as a history of no abuse.

2. Evidence of Suggestive Interviewing

The defense presented the testimony of Dr. William O'Donohue, a psychologist, concerning the evaluation of interviews with and testimony of child sexual abuse victims. He testified that sometimes children lie about being sexually abused or they may mistakenly believe that they have been sexually abused when they have not been. They can form false memories when improper interviewing and other techniques are used.

Dr. O'Donohue criticized the MDIC interviews of A. and B. He opined that the meaning of truth was not sufficiently discussed in the victims' interviews. There were some instances of improper repetitive questions and disconfirmation (leading the child to believe another answer was desired).

In evaluating the interviews, Dr. O'Donohue found there were inconsistencies in some of the core details, rather than just peripheral details. He described some of the core details that were inconsistent in the victims' statements concerning defendant's actions. He also determined that A.'s recollection of defendant's actions may have been contaminated by her abuse by another person.

However, Dr. O'Donohue stated that children as young as five years old can accurately report what happened to them.

In summary, Dr. O'Donohue had concerns about the manner in which the MDIC interviews were conducted but believed that, in all, they were not bad.

3. Character Evidence

Defendant had several witnesses testify, generally, concerning his good character. These included his fiancee, his stepmother, his ex-wife, his mother, a friend who is a corrections officer, and the wife of the corrections officer.

(Exhibit 1 at *2-13.)

**B.     Governing AEDPA Standards**

On review of a state court merits denial the federal writ may be granted neither upon a de novo view of the law, *Renico v. Lett,* 130 S.Ct. 1855, 1862 (2010), nor upon a de novo view of the facts to which the law applies, *Waddington v. Sarausad*, 129 S.Ct. 823, 835 & n.7 (2009).

8

1  Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown

2 that the earlier state court's decision "was contrary to" federal law then clearly established in the

3 holdings of this Court, § 2254(d)(1); *Williams v. Taylor*, 529 U. S. 362, 412 (2000); or that it

4 "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an

5 unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

6 *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).  Apart from these "exceptions," "[b]y its terms

7 § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court."  *Id*. at 784.

8  "[C]learly established … as determined by" the Supreme Court "refers to the holdings, as

9 opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court

10 decision."  *Williams*, 529 U.S. at 412.   Under this stringent standard, a "specific" legal rule may

11 not be inferred from Supreme Court precedent, merely because such rule might be logical given

12 that precedent.  Rather, the Supreme Court case itself must have "squarely" established that

13 specific legal rule.  *Richter*, 131 S.Ct. at 786; *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1419

14 (2009).  More, the Supreme Court itself must have applied the specific legal rule to the "context"

15 in which the petitioner's claim falls.  *Premo v. Moore*, 131 S.Ct. 733, 743 (2011); *Carey v.

16 Musladin*, 549 U.S. 70, 75-76 (2006) (Supreme Court's application of legal rule to government

17 practices does not clearly establish rule applies to private conduct).

18  And even if a general principle is established by the Supreme Court, the "factors" to be

19 considered must be stated by that Court, not a later court interpreting the opinion.  *Berghuis v.

20 Smith*, 130 S.Ct. 1382, 1389 (2010).  Even then, that Court's consideration of various factors does

21 not squarely establish a test for constitutional error, unless that Court itself said such factors

22 amount to a test.  *Renico*, 130 S.Ct. at 1865-66; *see Richter*, 131 S.Ct. at 786.

23  And stringent is the inquiry whether a rule—even when clearly established by the Supreme

24 Court—was impermissibly applied.

25  A state court's determination that a claim lacks merit precludes federal habeas relief so long

26 as "fairminded jurists could disagree" on the correctness of the state court's decision.

27 *Yarborough v. Alvarado*, 541 U. S. 652, 664 (2004).  And as this Court has explained,

28 "[E]valuating whether a rule application was unreasonable requires considering the rule's

9

1  specificity.  The more general the rule, the more leeway courts have in reaching outcomes in

2  case-by-case determinations." *Ibid*.  *Richter*, 131 S.Ct. at 786.

3      Under § 2254(d), a habeas court must determine what arguments or theories supported or,

4  as here, could have supported, the state court's decision; and then it must ask whether it is

5  possible fairminded jurists could disagree that those arguments or theories are inconsistent with

6  the holding in a prior decision of this Court.  *Id*.  That is " 'the only question that matters under

7  § 2254(d)(1).' "  *Id*.

8      Thus, the federal court must affirmatively account for all "arguments that would otherwise

9  justify the state court's result," measured solely against the "further limitations of § 2254(d),

10  including its requirement that the state court's decision be evaluated according to the precedents

11  of [the Supreme Court]."  *Richter*, 131 S.Ct. at 786.  "It bears repeating that even a strong case for

12  relief does not mean the state court's contrary conclusion was unreasonable."  *Id*.

13      If this standard is difficult to meet, that is because it was meant to be.  As amended by

14  AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims

15  already rejected in state proceedings.  *Cf. Felker v. Turpin*, 518 U. S. 651, 664 (1996) (discussing

16  AEDPA's "modified res judicata rule" under § 2244).  It preserves authority to issue the writ in

17  cases where there is no possibility fairminded jurists could disagree that the state court's decision

18  conflicts with this Court's precedents.  It goes no farther.  *Richter*, 131 S.Ct. at 786.  An essential

19  element of the petitioner's proof, therefore, is a showing "that the state court's ruling on the claim

20  being presented in federal court was so lacking in justification that there was an error well

21  understood and comprehended in existing law beyond any possibility for fairminded

22  disagreement."  *Id*.

23      Where the state court recites the correct standard, unreasonableness cannot be found

24  because the federal court disagrees with the state court's ultimate result.  *Rice v. Collins*, 546 U.S.

25  333, 342 (2006).  But even without an express recital, no "awareness" of Supreme Court

26  precedent need affirmatively appear; rather, it suffices that "neither the reasoning nor the result of

27  the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 11 (2002).

28

1    Nor can this be evaded by an attempt to re-litigate the facts, such as by resort to 28 U.S.C.

2    § 2254(e) to test whether the state court's factual conclusions were "correct."  To the extent a

3    petitioner (or federal court) might debate whether new evidence might show state court

4    factfinding was correct, the simple point is that the bar of 28 U.S.C. § 2254(d) is completely

5    independent of the question whether a state court determination is "correct."  To the contrary, the

6    sole question under § 2254(d)—whether in the factual or legal context—is whether the ruling was

7    "unreasonable."  And in the factual context that means the factfinding was unreasonable "in light

8    of the record before the state court, § 2254(d)(2)."  *Richter*, 131 S.Ct. at 785.  That is, just as a

9    past state court finding on a legal question cannot retroactively become "unreasonable" due to

10   later legal rulings not then available to the state court, neither can a past state court finding on a

11   factual question retroactively become "unreasonable" due to later existence of evidence which

12   was not then available to the state court.

13   An attempt to invoke 28 U.S.C. § 2254(e)(1) would alter nothing.  The provisions of

14   § 2254(e)(1) do not qualify the absolute bar of § 2254(d), given the simple fact that the prior

15   provision speaks to the circumstance wherein a federal court must determine what is "correct."[3]

16   But § 2254(d) has nothing to do with whether it was correct, in either fact or law, for the state

17   court to find no constitutional violation warranting relief.  Rather, that section concerns solely

18   whether the federal court may grant relief.

19   Section 2254(d)(1) does not instruct courts to discern or to deny a constitutional violation.

20   Instead, it simply sets additional standards for granting relief in cases where a petitioner has

21   already received an adjudication of his federal claims by another court of competent jurisdiction.

22   _____

23   [3] Section 2254(e) existed prior to enactment of the AEDPA (as then-subdivision (d)),
     governing a federal court's determination of whether in fact a constitutional violation occurred,
24   and at that time the sole question was whether a state court's ruling was correct.  That is to say,
     before and after the AEDPA, the positive authority to grant the writ was established by § 2254(a),
25   which made a finding of actual constitutional violation necessary to the granting of the writ.
     Even prior to the AEDPA, the sole function of § 2254(e) (as then-subdivision (d)) was to act as a
26   constraint on the authorization granted by § 2254(a).  That is to say, in determining whether in
     fact there was a violation as required by § 2254(a), the provisions of § 2254(e) (then (d)) required
27   a federal court to presume correct the factual finding of the state court.  Such presumption of
     correctness could be overcome by a sufficient showing.  But at all times the ultimate question for
28   a federal court was whether the state court was correct.

1     *Crater v. Galaza*, 491 F.3d 1119, 1127 (9th Cir. 2007) (emphasis added).  And in that

2 respect, reasonableness (not correctness, either in fact or law) of the state court ruling is "'the

3 only question that matters under § 2254(d)(1).'" *Richter*, 131 S.Ct. at 786.[4]

4     **C.**    **California Habeas Standards**

5        Additional considerations apply to claims which Petitioner presented on state habeas.

6        Even prior to the AEDPA's enactment, it was a clear point that the role of a federal court on

7 habeas is "secondary and limited," and that "Federal courts are not forums in which to relitigate

8 state trials." *Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).  And the AEDPA "limited rather

9 than expanded" the circumstances in which the federal court is to seek to overturn the state

10 judgment. *Fry v. Pliler*, 551 U.S. 112, 119 (2007).  Thus, "[i]n this and related contexts we have

11 made clear that whether a state court's decision was unreasonable must be assessed in light of the

12 record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004); *Richter*, 131 S.Ct.

13 at 785.  "… AEDPA generally prohibits federal habeas courts from granting evidentiary hearings

14 when applicants have failed to develop the factual bases for their claims in state courts.  28 U.S.C.

15 § 2254(e)(2)." *Schriro v. Landrigan*, 550 U.S. 465, 474 n.1 (2007).

16        A federal court generally must "declin[e] to consider evidence not presented to [the] state

17 court." *Holland*, 542 U.S. at 652 (summarizing *Bell v. Cone*, 535 U.S. 685, 697 n.4 (2002)).  A

18 prisoner may not develop evidence in federal court unless he was not "at fault in failing to

19 develop that evidence in state court." *Holland*, at 652-53.  Thus, just as a federal court must

20 consider the substantive strictures of 28 U.S.C. § 2254(d) to decide whether to grant an

21 evidentiary hearing, *Landrigan*, 550 U.S. at 474, it necessarily follows that a federal court must

22 consider the procedural strictures of state law in determining whether to grant an evidentiary

23 hearing.  It is not enough that a prisoner may have asserted to the state court that it should invest

24 the resources required by an evidentiary hearing—as though a bare request for a state evidentiary

25 hearing sufficed.  Rather, the prisoner had to make a sufficient effort in state court. *Williams*, 529

26         [4] And even apart from AEDPA's strictures, relief is barred unless a constitutional
violation, rendering the resulting custody illegal, would have been "apparent to all reasonable

27 jurists" based on the law extant when the conviction became final on direct appeal. *Beard v. Banks*, 542 U.S. 406, 413 (2004).

28

1  U.S. at 437 ("Federal courts sitting in habeas are not an alternative forum for trying facts and

2  issues which a prisoner made insufficient effort to pursue in state proceedings."  And per the

3  Supreme Court, an effort in state court is insufficient—plainly, simply—when that effort is not

4  "in the manner prescribed by state law." *Id.*  (emphasis added).

5       Here, under California's rules, habeas review provided a forum to plead and prove facts, if

6  a prisoner believes facts external to an appellate record shows custody is illegal.  *In re Harris*, 5

7  Cal.4th 813, 825-26 (1993); *In re Clark*, 5 Cal.4th 750, 764 n.3 (1993).  From the perspective of

8  collateral review, the judgment is final.  *People v. Duvall*, 9 Cal.4th 464, 474-75 (1995).  With

9  such finality comes a "strong presumption of constitutional regularity."  *Curl v. Superior Court*,

10  51 Cal.3d 1292, 1304 (1990) (emphasis omitted).  To open judicial investigation into a final

11  judgment, the necessary showing is concomitantly exacting—i.e., the burden of making out even

12  a prima facie case for habeas relief is "heavy."  *Duvall*, 9 Cal.4th at 474.

13       Substantively, certain claims are precluded.  At the outset, habeas is limited to issues of

14  "newly discovered evidence," "jurisdiction of the court," and alleged "constitutional" violations.

15  *Clark*, 5 Cal.4th at 766-67.  Even so, apart from alleged ineffectiveness of counsel, habeas review

16  does not extend to claims which could have been raised on direct appeal, whether or not they

17  were raised on appeal.  *Harris*, 5 Cal.4th at 826-34.  That precludes, on habeas, claims whose

18  "primary basis" is the "appellate record."  *Marks v. Superior Court*, 27 Cal.4th 176, 188 (2002).

19       Procedurally, the burden is (1) to allege objective facts, fully and with particularity, (2)

20  accompanied by a proffer of specific evidence, competent and admissible in an evidentiary

21  hearing, to prove such objective facts.

22         A petition for writ of habeas corpus initiates judicial proceedings to determine the
lawfulness of the petitioner's confinement.  (Citation.)  Because such a petition "seeks
23  to collaterally attack a presumptively final criminal judgment, the petitioner bears a
heavy burden initially to *plead* sufficient grounds for relief, and then later to *prove*
24  them." (Citation.)  At the pleading stage, the petition must state a prima facie case for
relief.  To that end, the petition "should both (i) state fully and with particularity the
25  facts on which relief is sought [citations], as well as (ii) include copies of reasonably
available documentary evidence supporting the claim, including pertinent portions of
26  trial transcripts and affidavits or declarations." (Citations.)

27  *In re Martinez*, 46 Cal.4th 945, 955-56 (2009) (original emphasis).

28

Thus, vague and conclusory notice-type pleading—even if appropriate for civil cases—is simply not permitted.  Instead, the petition must make *specific* assertions of objective *fact*, i.e., it must "state fully and with particularity the facts on which relief is sought."

Too—unlike civil cases—the prisoner must know the actual facts at the outset, for the assertions of objective fact must be made by *competent* sources: a prisoner who does not personally know a fact is true cannot create a triable question of fact by offering an *incompetent* declaration (from the prisoner or another declarant lacking personal knowledge) that the fact is true, even if the prisoner may suspect or wish to *believe* it is true.  Statutory rules of evidence preclude a litigant from offering, as an assertion of fact, that which is merely a conclusion (or hope).  Instead, the matters asserted must be within the declarant's personal knowledge.[5] California Evidence Code §§ 300 (rules of evidence apply to all judicial actions), 403(a)(2) & 702 (evidence generally inadmissible except upon personal knowledge).

Moreover, the supporting *evidence*—competent evidence—must be set forth at the outset, else there is no prima facie case warranting proceeding further to a hearing.  *In re Hawthorne*, 35 Cal.4th 40, 48 (2005) (at the outset, even to establish a "prima facie case" the petition "*must . . . 'include copies of reasonably available documentary evidence supporting the claim'*") (citing *Duvall*, 9 Cal.4th at 474).  This is so because the purpose of an evidentiary hearing is to determine whether the prisoner's evidence will actually prove the petition's assertions of fact to be true,[6] and incompetent evidence would not be admissible in the hearing itself.[7]  California does not

_____

[5] The California Supreme Court has explained that, despite the factual assertions in the petitioner's pleading, an evidentiary hearing was precluded absent an affirmative showing of competent evidence to support such assertions.  *People v. Karis*, 46 Cal.4th 612, 656 (1988) ("While defendant has denied [counsel's] allegations, he has not and apparently cannot offer proof that the declarations of counsel are untrue." (emphasis added)).  This accords with the long-accepted recognition that no triable issue of fact is created by an incompetent assertion.  Cf. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *Petition of Brabson*, 167 F.Supp 619, 620 n.2 (D.N.Y. 1958); and *see Weiss v. Cooley*, 230 F.3d 1027, 1034 (7th Cir. 2000) (ignoring, for lack of personal knowledge, affidavits based "on information and belief").

[6] *Duvall*, 9 Cal.4th at 478, 480-81; *In re Cordero*, 46 Cal.3d 161, 170 n.1 (1988) (sole function of evidentiary hearing on habeas is to make findings on issues of disputed objective fact).

[7] *Duvall*, 9 Cal.4th at 474 (quoting *Karis*, 46 Cal.3d at 656).  Again, this ban on proffering assertions of fact by incompetent sources is hardly unique to California.  *See Barrett v. United States*, 965 F.2d 1184, 1195 (1st Cir. 1992) ("These affidavits present no foundational facts as to the affiants' personal knowledge"); *Dalli v. United States*, 491 F.2d 758, 760 (2d Cir. 1974) ("hearsay statements will not normally entitle the applicant to relief . . . since such hearsay would

(continued…)

14

allow for an evidentiary hearing for a prisoner to *explore* whether evidence might exist for a claim:

> … [T]here is no postconviction right … to confirm mere speculation or hope that a basis for collateral relief may exist. The initial burden of proving guilt beyond a reasonable doubt is on the prosecution, and the panoply of rights accorded an accused person prior to his conviction supports the presumption that he is innocent. Different considerations apply, however, to collateral review of a final criminal judgment. For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; defendant thus must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands, and due process is not thereby offended. [Citations.] The state may properly require that a defendant *obtain some concrete information on his own* before he invokes collateral remedies against a final judgment.
>
> … As we have noted, habeas corpus is an extraordinary, limited remedy against a presumptively fair and valid final judgment. It is not a device for *investigating* possible claims, but a means for vindicating actual claims. …

*People v. Gonzalez*, 51 Cal.3d 1179, 1259-60 (1990) (emphasis added); *accord Rich v. Calderon*, 187 F.3d 1064, 1067-68 (9th Cir. 1999) ("Habeas … … was never meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence.' ")

And in California the proffer must be *specific* as to the evidence itself:

> It is the burden of the proponent of evidence to establish its relevance through an offer of proof or otherwise, … … [A]n offer of proof must be specific. It must set forth the actual evidence to be produced and not merely the *facts* or *issues* to be addressed and argued. …

*People v. Brady*, 129 Cal.App.4th 1314, 1332 (2005) (quote marks omitted, emphasis added). [8]

---

(…continued)
be inadmissible at the hearing itself"); *and see* Fed.R.Evid. 602.
    [8] Accord *People v. Schmies*, 44 Cal.App.4th 38, 53 (1996); see also *McCleery v. City of Bakersfield*, 170 Cal.App.3d 1059, 1074 (1985) (" '. . . An offer of proof that sets forth the substance of facts to be proved does not comply with Evidence Code section 354, subdivision (a), since facts do not constitute *evidence*. The substance of evidence to be set forth in a valid offer of proof means the testimony of specific witnesses, writings, material objects, or other things presented to the senses, to be introduced to prove the existence or nonexistence of a fact in issue.' . . . [¶] A proper offer of proof [would have] [set] forth the evidence to be presented through [a specific witness], the purpose for which such evidence was offered, its relevancy to the issues in the case, and the manner in which, and sources from which, [the witness] acquired the information he would impart . . . ." (original emphasis); *People v. Sperl*, 54 Cal.App.3d 640, 657 (1976) ("We have no way of knowing what the *evidence* at the requested hearing would have shown; however, we do know that it would be mere speculation to say that defendant's vague and nebulous offer of evidence would show actual and intentional discrimination in the enforcement of the statute in question. No indication whatsoever was given as to what *testimony* would be *elicited* from any of the individuals that defendant proposed to call." (emphasis added)).

15

1    As the California Supreme Court has explained, this is to be done at the initial filing.

2    Absent a present denial of a guaranteed right to counsel in the habeas proceeding itself, *see In re*

3    *Morgan*, 50 Cal.4th 932, 940-41 (2010), the petitioner cannot hold back, assuming he will have

4    an opportunity to supplement his presentation at some later point:

5        Summary disposition of a petition which does not state a prima facie case for relief is
         the rule.  (Citations.)  This practice is too well established (citation) to warrant any
6        inference that petitioners are justified in believing that the court will routinely delay
         action on a filed petition to permit amendment and supplementation of the petition.
7        [N.16]

8        [N.16.] The inclusion in a habeas corpus petition of a statement purporting to
         reserve the right to supplement or amend the petition at a later date has no effect.
9        The court will determine the appropriate disposition of a petition for writ of habeas
         corpus based on the allegations of the petition as originally filed and any amended
10       or supplemental petition for which leave to file has been granted.  The court
         *determines* on the basis of the allegations … as well as the *supporting*
11       *documentary evidence and/or affidavits*, which *should be attached* if available,
         whether a prima facie case entitling the petitioner to relief if the allegations are
12       proven has been stated.

13   *Clark*, 5 Cal.4th at 781 (emphasis added).

14       And proffer aside, no hearing is needed if existing records suffice to disprove the assertions.

15   *In re Hardy*, 41 Cal.4th 977, 990 (2007) (quoting *People v. Romero*, 8 Cal.4th 728, 739 (1994));

16   *see Perez v. Rosario*, 459 F.3d 943, 951 n.3 (9th Cir. 2006) (citing *Blackledge v. Allison*, 431 U.S.

17   63, 76 (1977) as "permitting summary dismissal of habeas petitions from state prisoners where

18   the claims in the petition are 'palpably incredible' or 'patently frivolous or false' ").

19                                    **ARGUMENT**

20   **I.    THE STATE COURT'S REJECTION OF THE ADMISSION OF EVIDENCE
             CLAIM IS NOT SHOWN TO BE OBJECTIVELY UNREASONABLE**

21

22       Petitioner claimed on direct appeal that while his attorney played parts of videotaped

23   interviews of child sexual assault victims during trial, the entirety of the videotapes were too

24   unreliable to be admitted into evidence and violated his right to a fair trial.  (Lod. Doc. 1.)  The

25   state court concluded that Petitioner had forfeited his Constitutional claim for lack of

26   contemporaneous objection.  (Exhibit 1.)  It further found that the videotapes were sufficiently

27   reliable to be admitted into evidence. (Exhibit 1.)  This conclusion about state court admissibility

28

                                          16

of evidence in state is not contrary to Supreme Court precedent.  Thus, Petitioner's claim must fail.

### A.    The state court's ruling

#### *Admissibility of Interview Videotapes*

Videotapes of B.'s and A.'s full interviews at the MDIC were admitted.  Defendant contends that their admission deprived him of his right to a fair trial because the hearsay statements contained in the videotapes were unreliable.  Defendant forfeited this constitutional argument because he did not object based on the fair trial ground, or any other constitutional doctrine, in the trial court. Even assuming the constitutional argument is not forfeited, defendant also forfeited the reliability argument because he did not make a timely and specific objection based on reliability.  Finally, the argument that the statements were so unreliable as to be inadmissible is without merit.

A. *Procedural Background*

The prosecution did not use the videotapes of the victims' MDIC interviews during its case-in-chief.  During the defense case-in-chief, defendant showed several excerpts of the videotapes during his questioning of the victims to impeach them with inconsistencies between their MDIC interviews and their trial testimony.

After defendant had shown parts of the MDIC interviews, the prosecution moved to show the entire interviews to the jury, citing Evidence Code section 356, which allows a party to introduce an entire writing or conversation when the opposing party has introduced part of it.  n1  Defendant's attorney stated that he did not think it was necessary to have the jury hear the preliminary part in which the victims identified themselves and discussed the importance of telling the truth because it was beyond the scope of defense questioning.  However, defendant's attorney said that the victims' allegations would "possibly all come in."  With that, counsel submitted the question of the admissibility of the videotapes to the court.  The trial court ruled that the videotapes were admissible in full.

> n1 Evidence Code section 356 states: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversa-tion, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

On the next day of trial, the prosecution played the videotapes for the jury.  After the videotapes were played, defendant's attorney objected to the admission of the videotapes pursuant to Evidence Code section 1360.  He said: "I don't believe that they would probably be admitted under [Evidence Code section 1360], and I think the basis for the District Attorney's argument and court's ruling being under the prior consistent and inconsistent statements, and rule of completeness, but I certainly don't concede that these would be admissible under 1360."  Defendant's attorney did not say why he believed the videotapes were not admissible pursuant to Evidence Code section 1360.

After some further discussion, the trial court said, referring to the substance of Evidence Code section 1360: "I am prepared to find that the timing of the tapes, and

17

the content of the tapes, and circumstances of taking these statements is sufficient indicia for reliability, not for the court to vouch for them by any means, but sufficiently reliable for them to be introduced into evidence."  The court added that the victims were still subject to recall, even though they had already testified.  n2.  That ended discussion of the matter.

n2 Defendant concedes that he forfeited the issue of whether the trial court should have held a hearing on admissibility of the MDIC interview videotapes.

B. *Analysis*

1.  Forfeiture of Constitutional Argument

Defendant forfeited his argument that the admission of the videotapes violated his fair trial rights because he did not object to the admission of the videotapes on that ground in the trial court. (*People v. Benson* (1990) 52 Cal.3d 754, 788.)  "[T]he rule that a challenge to the admission of evidence is not preserved for appeal unless a specific and timely objection was made below stems from long-standing statutory and common law principles." (*People v. Anderson* (2001) 25 Cal.4th 543, 586.)  In any event, the contention is without merit.

2.  Forfeiture of Reliability Argument

Defendant argues that the videotaped interviews were unreliable under the criteria used for determining admissibility pursuant to Evidence Code section 1360.  That section allows admission of hearsay statements made by the victim when the victim was under the age of 12 if certain conditions are met.  n3  One of those conditions is that "the time, content, and circumstances of the statement provide sufficient indicia of reliability."  (Evid. Code, § 1360, subd. (a)(2).)  The determination of whether there is sufficient indicia of reliability is made after a hearing outside the presence of the jury.  However, no such hearing need be held or determination of reliability made if the defendant does not interpose a timely and specific objection. (Evid. Code, § 353.)

n3 Evidence Code section 1360 states:

"(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse . . . is not made inadmissible by the hearsay rule if all of the following apply:

"(1) The statement is not otherwise admissible by statute or court rule.

"(2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability.

"(3) The child either:

"(A) Testifies at the proceedings.

"(B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child.

"(b) A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement. . . ."

Defendant failed to preserve an objection based on the reliability of the victims' MDIC statements.  The jury was shown the MDIC interviews via videotape before defendant's attorney raised the issue of whether they were admissible pursuant to Evidence Code section 1360.  Thus, even if the belated statement that counsel did not concede the Evidence Code section 1360 issue could be perceived as an objection, it was untimely, resulting in forfeiture of the issue for appellate purposes.  (Evid. Code, § 353.)

Defendant was the original proponent of at least some of the statements from the victims' MDIC interview.  As far as reliability is concerned, defendant makes no effort to distinguish between the statements from the MDIC interviews that he used to impeach the victims and the statements later admitted to give the entire interviews to the jury.

3.  Merits of Reliability Argument

Defendant bases his constitutional fair trial argument on the Fourteenth Amendment requirement that "victims' hearsay statements possess sufficient indicia of reliability to satisfy due process."  (*People v. Otto* (2001) 26 Cal.4th 200, 211.)  n4  Based on this constitutional dimension of his argument, he asserts that error requires reversal unless the error was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].)  As we discuss below, we need not consider prejudice because there was no error.  The evidence was sufficiently reliable to be admissible.

n4  Defendant's citation of *People v. Otto* for the proposition that victims' hearsay statements must be sufficiently reliable to satisfy due process is problematic.  That case involved a civil proceeding to commit a sexually violent predator.  The court determined that multiple-level hearsay of the victim was admissible, even though the victim did not testify.  (*People v. Otto*, *supra*, 26 Cal.4th at pp. 209-215.)  Even assuming, however, that the reliability of a victim's testimony implicates due process in a criminal proceeding in which the victim testifies, defendant's argument that he was denied a fair trial is without merit.

Even assuming defendant preserved an objection based on reliability, his contention that the statements of the victims were not sufficiently reliable to be admitted is without merit.  It is doubtful that Evidence Code section 1360 should be applied in this instance because defendant introduced parts of the interviews which then became admissible in full pursuant to Evidence Code section 356.  Nevertheless, the reliability argument would not have prevailed, even if it had been raised in a timely and pertinent manner.

To be admissible, hearsay evidence must exhibit sufficient indicia of reliability. (*Idaho v. Wright* (1990) 497 U.S. 805, 814-815 [111 L.Ed.2d 638, 651-652].)  "In *Idaho v. Wright*, *supra*, 497 U.S. at pages 821-822, the court identified a number of nonexclusive factors that are relevant to the determination of whether child hearsay statements possess the requisite indicia of reliability: (1) spontaneity and consistent repetition of the statement(s); (2) the declarant's mental state; (3) the declarant's use of terminology unexpected of a child of similar age; and (4) the lack of a motive to

19

1  fabricate.  (*Ibid.*)  Courts have 'considerable leeway in their consideration of
   appropriate factors.'  (*Id.* at p. 822.)  The 'unifying principle is that these factors
2  relate to whether the child declarant was particularly likely to be telling the truth
   when the statement was made.'  (*Ibid.*)  We independently review a trial court's
3  determination that the statements bore sufficient indicia of reliability.  [Citations.]"
   (*People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1374.)

4

5  Defendant asserts that the evidence did not support a finding of reliability because the
   statements of B. and A. were not spontaneous and consistent, referring to the first
6  factor  noted by the United States Supreme Court in *Idaho v. Wright*.  With this
   argument, defendant implicitly concedes that the other factors favored a finding of
7  reliability, namely the mental state of B. and A., their use of terminology unexpected
   of a child of similar age, and the lack of motive to fabricate.

8  While it is true that some of the statements of B. and A. were inconsistent, especially
   when viewed between the MDIC interviews, which took place in April 2003, and the
9  trial in June 2007, more than four years later.  That is unremarkable given the tender
   age of the victims and the intervening period.

10

11  Citing lack of spontaneity, defendant asserts that, at trial, B. acknowledged that she
    either lied or was mistaken in parts of her MDIC interview.  We disagree that this
12  shows lack of spontaneity.  To the contrary, it appears to be the child's honest attempt
    to tell the truth during her trial testimony and account for differences in her MDIC
13  interview.

14  Defendant cites A.'s inability to recall the MDIC interview and her failure to report
    defendant's abuse in some of her counseling as reasons to find that her statements at
15  the MDIC interview lacked consistency and spontaneity.  We fail to see anything
    more than a slight relevance of these circumstances to the reliability of A.'s
16  statements during the MDIC interview.

17  The trial court found that the "timing of the tapes, and the content of the tapes, and
    circumstances of taking these statements" supported a finding of reliability.  We
18  agree.  The MDIC interviews were much closer in time to the abuse than was the trial.
    The victims appeared to have no motive to fabricate and exhibited their ability to
19  know truth from lies.  Accordingly, the totality of the circumstances supported the
    trial court's finding that the statements made by B. and A. in their MDIC interviews
20  were sufficiently reliable.

21  Since (1) defendant's argument that admission of the MDIC interview videotapes
    violated his constitutional fair trial rights is based on the reliability of the hearsay
22  statements in the videotapes and (2) the statements were sufficiently reliable to be
    admissible, defendant's constitutional argument is without merit, in addition to being
23  forfeited.

24  (Exhibit 1 at *13-23.)

25      **B.    Analysis**

26      Initially, Petitioner is barred from bringing this claim on federal habeas based on the state

27  court's finding on direct appeal that Petitioner forfeited the claim for lack of contempora-neous

28  objection at trial.  (Exhibit 1 at *16-19.)  A claim is considered procedurally defaulted where the

                                          20

1    state court invokes a state procedural rule, which is adequate to support the judgment and

2    independent of federal law, as a basis for rejecting a habeas claim. *Coleman v. Thompson*, 501

3    U.S. 722, 729-730 (1991). "If the state court rejects the claim on procedural grounds, the claim is

4    barred in federal court unless one of the exceptions to the doctrine of *Wainwright v. Sykes*, 433

5    U.S. 72, 82-84 [] (1977), applies." *Richter*, 131 S.Ct. at 787. That is, "review of the claim should

6    be barred on habeas, as on direct appeal, absent a showing of cause for the noncompliance and

7    some showing of actual prejudice resulting from the alleged constitutional violation." *Sykes*, 433

8    U.S. at 84. Moreover, if the alleged "cause" is itself a claimed constitutional violation, that claim

9    too must be exhausted—and moreover exhausted as an *independent* claim, rather than merely as

10   an attempt to set aside the default. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000)

11   (citing *Murray v. Carrier*, 477 U.S. 478, 489 (1986)) (in procedural default context, constitutional

12   claim amounting to cause must itself be exhausted in state court as an independent claim for

13   relief)).

14       The invocation of California's procedural bar here—failure to contemporaneously object—

15   is fatal to the attempt to raise the claim here. *See Melendez v. Warden*, 288 F.3d 1120 (9th Cir.

16   2002) (citing *Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981)); *Vansickel v. White*, 166

17   F.3d 953, 957 (9th Cir. 1999). Thus, Petitioner should be barred from raising this claim on federal

18   habeas.

19       Relief is barred on the claim for the independent reason that the state court also reached the

20   merits. Admissibility as a matter of state law is simply not before this Court. 28 U.S.C.

21   § 2254(a); *Estelle v. McGuire*, 502 U.S. 62 (1991). And the Ninth Circuit itself has explained

22   that general due process challenges to admission of evidence, once rejected on the merits by a

23   state court, can provide no basis for relief on federal habeas. *Holley v. Yarborough*, 568 F.3d

24   1091, 1101 (9th Cir. 2009); *and see Colorado v. Connelly*, 479 U.S. 157, 168 (1986) (the possible

25   admission of evidence that "might be proved to be quite unreliable, … is a matter to be governed

26   by the evidentiary laws of the forum, … , and not by the Due Process Clause of the Fourteenth

27   Amendment"). That bars the writ.

28

21

1    **II.    THE STATE COURT REJECTION OF THE INEFFECTIVE ASSISTANCE OF COUNSEL**
2         **CLAIM IS NOT SHOWN TO BE OBJECTIVELY UNREASONABLE**

3         In the state court, Petitioner claimed that his counsel was ineffective for failing to raise an

4    objection to the jury having access during deliberations to videotapes of the interviews of the

5    victims, which tapes had been played in court by both parties and admitted into evidence.  (Lod.

6    Doc. 10.)  Petitioner claimed that counsel should have been "on notice" to make this objection

7    based on unpublished California case law, and that there was no downside to objecting.  (Lod.

8    Doc. 10.)  Petitioner claimed he was prejudiced because the jury *may have* given "undue

9    emphasis" to this evidence.  (Lod. Doc. 10.)  The state court's denial of the merits of this claim

10   was not unreasonable.  There is no Supreme Court precedent holding that counsel must make a

11   baseless objection merely because there is nothing to lose by doing so.  Moreover, Petitioner has

12   not demonstrated prejudice.  His allegation that the jury may have given "undue emphasis" to

13   evidence that was admitted at trial, even if relevant to a prejudice analysis, is only speculation.

14   The Supreme Court has held that evidence of prejudice must be "substantial."  The writ must be

15   denied.

16        **A.     *Strickland* and the AEDPA**

17        To establish deficient performance, a person challenging a conviction must show that
          'counsel's representation fell below an objective standard of reasonableness.'
18        [Citation.]  A court considering a claim of ineffective assistance must apply a '*strong*
          presumption' that counsel's representation was within the 'wide range' of reasonable
19        professional assistance.  [Citation.]  The challenger's burden is to show 'that counsel
          made errors so serious that counsel was not functioning as the "counsel" guaranteed
20        by the Sixth Amendment.'  [Citation.]

21        With respect to prejudice, a challenger must demonstrate 'a reasonable probability
          that, but for counsel's unprofessional errors, the result of the proceeding would have
22        been different.

23   *Richter*, 131 S.Ct. at 787 (italics added).

24        The Supreme Court has elaborated on the caution required before a court may conclude the

25   above showing " 'that counsel made errors so serious that counsel was not functioning as the

26   'counsel' guaranteed the defendant by the Sixth Amendement' " has truly been made:

27        'Surmounting *Strickland*'s high bar is never an easy task.'  [Citation.]  An ineffective-
          assistance claim can function as a way to escape rules of waiver and forfeiture and
28        raise issues not presented at trial, and so the *Strickland*  standard must be applied with

                                                    22

scrupulous care, lest 'intrusive post-trial inquiry" threaten the integrity of the very
adversary process the right to counsel is meant to serve. [Citation.] Even under de
novo review, the standard for judging counsel's representation is a most deferential
one. Unlike a later reviewing court, the attorney observed the relevant proceedings,
knew of materials outside the record, and interacted with the client, with opposing
counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's
assistance after conviction or adverse sentence.' [Citations.]

*Richter*, 131 S.Ct. at 788.

The inquiry tests the 'objective,' rather than subjective, reasonableness of counsel's actions.

*Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000) ("we have held that the Federal Constitution

imposes *one* general requirement: that counsel make *objectively* reasonable choices" (emphasis

added); *Strickland v. Washington*, 466 U.S. 688, 687-88 (1984); *see also Chandler v. United*

*States*, 218 F.3d 1305, 1315-16 & nn. 16&17 (11th Cir. 2000). Thus, a petitioner must make a

"highly demanding" showing of attorney conduct for which there is no objective explanation

other than "gross incompetence." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). And,

because the inquiry is objective, the focus must be on whether acceptable reasons existed, and not

on whether counsel's actual *strategy* was based on such reasons. The Supreme Court has

explicitly made the point: "The relevant question is *not* whether counsel's choices were *strategic*,

but whether they were reasonable." *Roe*, 528 U.S. at 481 (italics added); *see id.* at 479 ("we have

held that the Federal Constitution imposes *one* general requirement: that counsel make *objectively*

reasonable choices" (italics added)).

Although courts may not indulge 'post hoc rationalization' for counsel's
decisionmaking that contradicts the available evidence of counsel's actions, [citation],
*neither may they insist counsel confirm* every aspect of the strategic basis for his or
her actions. There is a '*strong* presumption' that counsel's attention to certain issues
to the exclusion of others reflects trial tactics rather than 'sheer neglect.' [Citation.]
After an adverse verdict at trial even the most experienced counsel may find it
difficult to resist asking whether a different strategy might have been better, and, in
the course of that reflection, to magnify their own responsibility for an unfavorable
outcome. *Strickland*, however, calls for an inquiry into the *objective* reasonableness
of counsel's *performance*, not counsel's *subjective state of mind*. [Citation.]

*Richter*, 131 S.Ct. at 790 (italics added).[9]

_____

[9] *See, e.g., Chandler*, 218 F.3d at 1314 n. 15 ("The presumption about which we write
here is not some presumption that the particular defense lawyer *in reality* focused on and, then,
deliberately decided to do or not do a specific act. Instead, the presumption to which we refer is
the presumption that what the particular defense attorney *did* at trial –for example, what witnesses

(continued…)

23

1   The Constitution does not compel counsel to perform at full-speed, making every effort and

2   anticipating every contingency.  *Richter*, 131 S.Ct. at 789 ("Rare are the situations in which the

3   'wide latitude counsel must have in making tactical decisions' will be limited to any one

4   technique or approach."); *id.* at 791 (finding counsel has no duty "to be prepared for 'any

5   contingency' "; there is no expectation that competent counsel will be a flawless strategist or

6   tactician"; and "an attorney may not be faulted for a reasonable miscalculation or lack of foresight

7   or for failing to prepare for what appear to be remote possibilities"); *McMann v. Richardson*, 397

8   U.S. 759, 769 & 770 (1970) (counsel is not deficient merely for having "mistakenly assessed"

9   some point, or for having made a "misjudg[ment]"); see *Strickland*, 466 U.S. at 687 (citing

10  *McMann*); *accord Parker v. North Carolina*, 397 U.S. 790, 797-98 (1970).  Counsel is entitled to

11  account for limits of time and resources in electing which course to follow.  *Richter*, 131 S.Ct. at

12  789; *accord LaGrand v. Stewart*, 133 F.3d 1253, 1275 (9th Cir. 1998) (citing *Atkins v. Singletary*,

13  965 F.2d 952, 960 (11th Cir. 1992) (for proposition that "The Constitution 'requires a good deal

14  less than maximum performance' ")).

15      Proving mere attorney error will not show deficiency, for error*less* performance is not the

16  prevailing norm.  *Richter*, 131 S.Ct. at 790.  Rather, to amount to deficiency of counsel (without

17  even reaching the question of prejudice therefrom), an error by counsel must be "unprofessional,"

18  *Strickland*, 466 U.S. at 694—i.e., the sort of error from which only could be considered gross

19  incompetence, *Kimmelman*, 477 U.S. at 382, as opposed to the mere possible miscalculation that

20  is possible for even competent counsel.  Only when that sort of extremely grave error has

21  occurred can it be said that, by reason of that act or omission, "counsel was not functioning as the

22  'counsel' guaranteed the defendant by the Sixth Amendment."  *See Strickland*, at 687 (italics

23  added); *see Richter*, 131 S.Ct. at 741 (judicial conclusion of what legal result would have

24

25  (…continued)
    he presented or did not present –were *acts* that some reasonable lawyer might *do*."  (italics
26  added); *see id.* at 1315-16 & nn. 16 & 17, 1326 n.41; *Morris v. State of California*, 966 F.2d 448,
    456-57 (9th Cir. 1991) ("We need not determine the *actual explanation* of trial counsel's failure
27  to object so long as the failure to do so falls within the range of reasonable representation."
    (italics added)).
28

1   followed from particular act by counsel is "not the same as" a conclusion that "no competent

2   attorney would think" otherwise).

3       Federal courts may not impose specific duties of counsel, against which to find a state court

4   unreasonably rejected an ineffectiveness claim.  Rather, if the Supreme Court itself has not

5   "squarely" confronted a "specific legal rule," a federal court may not apply such specific rule as a

6   clearly established component of the general rule in *Strickland*.  *Richter*, 131 S.Ct. at 786;

7   *Knowles*, 129 S.Ct. at 1419.  *Strickland* itself expressly forbade courts from attempting to devise

8   and enforce "specific guidelines," 466 U.S. at 688 ("More specific guidelines are not appropriate.

9   The Sixth Amendment refers simply to 'counsel,' not specifying particular requirements of

10  effective assistance."; *id*. at 689 ("the existence of detailed guidelines for representation could

11  distract counsel from the overriding mission of vigorous advocacy of the defendant's cause").

12  The Supreme Court has reinforced the point, time and again, even upon de novo review.  *Richter*,

13  131 S.Ct. at 779; *Roe*, 528 U.S. at 479 ("we have held that the Federal Constitution imposes one

14  general requirement: that counsel make objectively reasonable choices"); *Nix v. Whiteside*, 475

15  U.S. 157, 165 (1986) ("In *Strickland*, we acknowledged that the Sixth Amendment *does not*

16  *require any particular response by counsel* to a problem that may arise.  Rather, the Sixth

17  Amendment inquiry is into whether the attorney's conduct was 'reasonably effective.' "  (italics

18  added)).

19      Relief on an ineffective assistance claim is to be all the more gruding on federal review

20  under the AEDPA, for "[w]hen § 2254(d) applies, the question is not whether counsel's actions

21  were reasonable.  The question is whether there is any reasonable argument that counsel satisfied

22  *Strickland*'s deferential standard."  *Richter*, 131 S.Ct. at 788 (italics added).  And it may safely be

23  said that fairminded jurists should find it "difficult" to conclude a state court was compelled to

24  find ineffectiveness proven, if there was a plausible basis for the state court to find "counsel's

25  overall performance indicate[d] active and capable advocacy."  *Id*. at 791 (italics added).

26      Assuming counsel's errors amounted to gross incompetence, there must also be affirmative

27  proof of a reasonable probability the defendant otherwise would have fared better.  In this respect,

28  in all but "the rarest case," the answer will be the same as whether a more favorable result was

25

more probable than not.  *Richter*, 131 S.Ct. at 792.  But of course, the mere fact a defendant did not obtain some possible advantage does not itself imply the adversarial process itself *failed* (any more than if opposing miscalculation led to the prosecution not gaining some advantage).  Thus, even if counsel's errors concededly "*had* some conceivable effect on the outcome," that is not enough.  *Id.* at 787.  Rather, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' "  *Id.* at 787-88 (italics added).

### B.    Alleged Deficient Performance

Petitioner has not met his burden of demonstrating that counsel's made errors so serious that he was not acting as counsel guaranteed by the Sixth Amendment.  In the state court petition, he alleged that counsel should have been "on notice" to make an objection because there were some unpublished decisions that supported making the objection, and there was no downside to making the objection.  With this argument, Petitioner essentially proffered the "nothing to lose" argument that the Supreme Court specifically rejected in *Knowles*.  "This Court has never established anything akin to the Court of Appeals' 'nothing to lose' standard for evaluating *Strickland* claims."  *Knowles*, 129 S.Ct. at 1419.  Thus, fairminded jurists could find at least debatably supportable the state court's rejection of a claim of deficiency premised upon such a theory.

Moreover, fairminded jurists could find the question of whether the tapes were properly submitted to the jury during deliberations was necessarily a question of state law, and Petitioner plainly could not contest an implicit state court ruling that there was a rule of state law for counsel to invoke.  Cf. Cal. Penal Code § 1137 ("Upon retiring for deliberation, the jury may take with them all papers (except depositions) which have been received as evidence in the cause…").

### C.        Alleged prejudice

In addition, Petitioner fails to show fairminded jurists unanimously would find no room to debate that the state court was compelled to find Petitioner established prejudice.  In this respect, in all but "the rarest case," the answer will be the same as whether or a more favorable result was more probable than not.  *Richter*, 131 S.Ct. at 792.  First, because the state court could find the foregone objection meritless under state law, it necessarily follows that fairminded jurists could reject outright any suggestion anything would have changed in the face of such objection.  That precludes any argument of unreasonableness, even with no need for further discussion.

Further, Petitioner's theory the jurors may have placed "undue" emphasis on the tapes is a theory with no connection to any Supreme Court precedent—at least fairminded jurists could find a state court conclusion to that effect within the realm of reason.  What emphasis is "due" to particular evidence is such emphasis as jurors—in their province as triers of act—find to be appropriate.  Fairminded jurist could conclude that no Supreme Court precedent clearly establishes it is wrong for a state court to reject the theory that a trial becomes something other than "fair" and "reliable," *Strickland*, 466 U.S. at 787-88, merely because the trier of fact is permitted to assign to evidence such weight as it will.  *Cf. Tuilaepa v. California*, 512 U.S. 967, 977 (1994) (even in capital context, counsel may argue points of view, but weight to be given to evidence is province of trier of fact).  For these reasons, Petitioner's claim must fail.

### III.    THE STATE COURT REJECTION OF THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS NOT SHOWN TO BE OBJECTIVELY UNREASONABLE

In his state court habeas petition, Petitioner claimed that his attorney was ineffective for deciding not to retain a *Stoll*[10] expert to examine him to determine if he "gave any evidence of being the kind of sexual deviate who would have sex with hi[s] own young children or step-children." (Lod. Doc. 10.)  The roundabout method of discussion in Petitioner's pleading is merely an attempt to say it was unreasonable for the state court to accept that counsel can in fact make a decision not to investigate.  However, that position is inconsistent with Supreme Court

---

[10] See *People v. Stoll*, 49 Cal.3d 1136, 1158 (1989), finding expert witness testimony on whether a defendant possesses characteristics of a person who would molest a child admissible.

precedent.  "*Strickland*…permits counsel to 'make a reasonable decision that makes particular

investigations unnecessary.'"  *Richter*, 131 S.Ct. at 788.  Moreover, Petitioner cannot demonstrate

prejudice; he merely speculates as to what the test would have found and how the hypothetical

results would have affected his trial.  Petitioner's claim should be denied.

As the Supreme Court stated in *Richter*:

> Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence, whether pretrial, at trial, or both.  There are, however, 'countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.'  [Citation.]  Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach.  [Citation.]

*Richter*, 131 S.Ct. at 788.  Petitioner himself proffered evidence of trial counsel's

decisionmaking, in that counsel stated:

> []  I chose not to have [Petitioner] examined by a psychologist or psychiatrist in order to present evidence of lack of propensity under *Stoll*.

> []  The reason I chose not to do so is because I believe that presentation of such testimony has a net negative effect on jury decision-making, as set forth below.

> []  In speaking with jurors during my career, I find that most have a pre-set view that a person who commits child sexual molestation is a paedophile and, conversely, that, if a person is not a pedophle then they will not commit child sexual molestation.

> []  Accordingly, if the jurors get the impression that the person is not a paedophile, whether by visually assessing a defendant and/or through character witness testimony and/or through inferences or evidence that the person has never engaged in such conduct before, they will thus consider him to have no reason to commit the charged crimes and this can undermine the prosecution's proof.

> []  However, while a psychologist or psychiatrist could offer a soft-science medical opinion that a defendant is not a paedophile, such a witness will have to concede on cross-examination that non-paedophiles can and regularly do commit child sexual molestation due to other factors such as life stressors, immaturity, emotional breakdown, relationship issues, ect.

> []  Such a concession undermines any exculpatory opinions that jurors have garnered that a defendant is not a pedophile, because they no longer believe that if a person is not a pedophile then they will not commit child sexual molestation.

> []  Such a concession also provides dangerous connections to background information presented in the trial that may suggest that a defendant was undergoing life stressors, was immature, was suffering an emotional breakdown, or had relationship issues, ect, thus providing a motive that was otherwise not apparent.  (In fact, a clever prosecutor

28

1    will tie cross-examination questions to particular issues/situations related to a
2    defendant in order to highlight such a connection).

3    (Lod. Doc. 10.)

4         Fairminded jurists might readily find this reflects the very sort of extra-record knowledge

5    and experience which a state court could find proper as part of what counsel may (and even

6    should) use when electing within the wide range of options as to how to approach the are of

7    defense advocacy.  *See Richter*, 131 U.S. at 788 ("Even under de novo review, the standard for

8    judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the

9    attorney observed the relevant proceedings, knew of materials outside the record, and interacted

10   with the client, with opposing counsel, and with the judge.")  Whatever Petitioner's "expert"

11   might think as a result from her experience, it was trial counsel who represented Petitioner, and

12   who drew upon his experience—and his election did not become unreasonable after the fact

13   merely because Petitioner's guilt remained apparent to the jurors at the end of trial.  That

14   election—to proceed via commonsense impeachment, and character evidence solely from lay

15   witnesses (who, unlike "experts," were not subject to being pressed to concede what Petitioner

16   might have done under stressful circumstances)—made investigation of experts unnecessary.

17   Thus, it is unrealistic for Petitioner to suggest fairminded jurists would find no room even to

18   debate whether there was justification for a state court finding that Petitioner failed affirmatively

19   to prove deficiency of counsel.

20        And, fairminded jurists could find the state court rejection of the ineffectiveness claim at

21   least debatably supportable because the state court could find, as an "independent basis for

22   decision," *Holland*, 542 U.S. at 652, Petitioner failed to affirmatively demonstrate prejudice.

23   First, it would have been fatal even under circuit law that Petitioner failed to show *factually* what

24   "specific … evidence" actually would have been available for trial counsel to present to jurors in

25   the event of such investigation.  *Davis v. Woodford*, 384 F.3d 628, 650 (9th Cir. 2004); *see Alcala*

26   *v. Woodford*, 334 F.3d 862, 869 (9th Cir. 2003) (even under circuit law, petitioner "must prove all

27   facts underlying his claims of ineffective assistance by a preponderance of the evidence").  And if

28   that were not enough (and it is), a state court could find Petitioner's showing did nothing to show

1   counsel's election was not actually *beneficial*, in that Petitioner had nothing to counter counsel's

2   point that cross-examination and prosecutorial argument could have provided ammunition to

3   argue adverse inferences from the hypothetical "expert" testimony.  (CITE); *cf. Wong v.*

4   *Belmontes*, 130 S.Ct. 383, 386 (2009) (on question of prejudice, "it is necessary to consider *all*

5   the relevant evidence that the jury would have had before it if [counsel] had pursued the different

6   path—not just the [favorable] evidence … , but also the [adverse] evidence that almost certainly

7   would have come in with it" (original emphasis)).

8       For the foregoing reasons, the writ must be denied.

9   **IV.   THE STATE COURT REJECTION OF THE PROSECUTORIAL MISCONDUCT CLAIM IS**
        **NOT SHOWN TO BE OBJECTIVELY UNREASONABLE**
10

11      Petitioner claimed on direct appeal that the prosecutor committed misconduct in closing

12   argument by arguing that a defense expert had a bias in concluding the child victims' memories

13   of sexual abuse were false because the had been paid $6400 in advance of testifying to that

14   opinion.  (Lod. Doc. 1.)  Petitioner claimed that this single comment during closing argument

15   infected his whole trial with unfairness and affected the resulting verdicts.  (Lod. Doc. 1.)  The

16   state court denied his claim finding that it was forfeited for lack of objection at trial, and that the

17   prosecutor's argument did not amount to prosecutorial misconduct because it was in the realm of

18   proper argument regarding a paid expert.  (Exhibit 1.)  The state court further determined that,

19   even assuming misconduct, there was no resulting prejudice because Petitioner could not have

20   received a more favorable outcome, aside from this single comment.  (Exhibit 1.)  The state

21   court's opinion was in accord with Supreme Court precedent on allegations of prosecutorial

22   misconduct.  The claim must be denied.

23      **A.   State court's ruling**

24   *Alleged Prosecutorial Misconduct*

25   Defendant contends that the prosecutor's comments during closing argument
     concerning the testimony of defense expert Dr. William O'Donohue, who testified
26   about interviews of young victims, constituted prosecutorial misconduct.  We
     conclude that defendant forfeited this issue because he failed to object to the
27   prosecutor's comments.  In any event, to the extent the comments were improper,
     they were not prejudicial.
28

30

A. *Background*

Dr. O'Donohue has testified many times in criminal proceedings, about 90 percent of which has been for the defense.  He is paid $ 400 per hour for his services and $ 200 per hour for travel.  He is not retained unless he determines that there is a problem with the interviewing done on the victim.

During closing argument, the prosecutor commented on Dr. O'Donohue's testimony.  The prosecutor calculated, based on Dr. O'Donohue's rate and the number of hours he spent on this case, that he had earned $ 6,400.  The prosecutor stated: "And for that price, you get a lot of false memories."  Later in the closing argument, the prosecutor returned to the topic of Dr. O'Donohue's alleged bias:

"Doctor O'Donohue.  I am not going to get up here and say Doctor O'Donohue is a boldface liar, and that he doesn't have any place in the criminal justice system, he should just never ever, ever see the face of a courtroom again.  That's not what I am here to say.  [P] But when you apply the law, and you apply the law to the opinions of Doctor O'Donohue, and you apply the expert witness law, and the law in regards to how you look at any witness's testimony, bias, interest, or motive, some things are readily apparent.  [P] If Doctor O'Donohue got up here and said, I am sorry, [defense counsel], that's a perfect MDIC interview, and these children, no matter how inconsistent, it's perfect.  [P] Would he make $ 400 an hour and $ 6400 a case if he continued to tell defense attorneys what they didn't want to hear?  Come on, folks.

"Is he going to get up here and lie, no.  But is he motivated by desire to generate income.  Is he motivated by a desire to be retained again by defense attorneys.  Yes.  [P]  But, you know, Doctor O'Donohue says these kids are lying, and they are just -- they are telling people what they want to hear, you know.  [P] They just know that these adults want to hear these horrific things, so that's just what they are telling them.  I mean, Doctor  O'Donohue says, look, these are horrible things, and children want to say these things because they are horrible, they want to get this stuff off their chest, you know.  [P]  And that's why when you see the inconsistencies, I mean, you could tell they are lying."

Defendant did not object to any of the prosecutor's comments concerning Dr. O'Donohue.

B. *Analysis*

1. Forfeiture

"'[A] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion -- and on the same ground -- the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.  [Citation.]' [Citation.]"  (*People v. Stanley* (2006) 39 Cal.4th 913, 952.)

Here, defendant did not object to the statements that he now asserts constituted prosecutorial misconduct.  He has therefore forfeited review of the issue on appeal.

Nonetheless, defendant asserts that we should consider the issue because (1) an objection, and resulting admonition, would not have cured the unfairness and (2) the comments infected the trial with unfairness.  Neither assertion has merit.

The only potential problem with the prosecutor's argument is that the defense bought Dr. O'Donohue's conclusion that there had been problems with the interviews ("And

31

for that price, you get a lot of false memories").  If the comment constituted misconduct, a timely objection would have prompted the trial court to admonish the jury to disregard that statement and to remember that argument does not constitute evidence.

Additionally, the comment did not infect the trial with unfairness to the extent that defendant was denied a fair trial.  (*See Darden v. Wainwright* (1986) 477 U.S. 168, 181 [91 L.Ed.2d 144, 157] [reversal if comments so infected trial as to deny due process]; *People v. Farnam* (2002) 28 Cal.4th 107, 167.)  The prosecutor's comments on Dr. O'Donohue's possible bias occasioned by his profit motive were appropriate observations.  "It is within the bounds of proper argument to attack the credibility of defense expert witnesses, and the weight to be given their testimony, based on the witnesses' compensation and the fact of their employment." (*People v. Babbitt* (1988) 45 Cal.3d 660, 702.)  To the extent the prosecutor may have gone beyond proper argument to insinuate that Dr. O'Donohue's conclusions were for sale was but a small jump from the proper argument concerning his bias.  Accordingly,  defendant's argument that the comments infected the trial with unfairness is without merit and did not excuse the failure to object.

2.  Merits

Even assuming defendant did not forfeit his prosecutorial misconduct argument by failing to object in the trial court, we conclude that the prosecutor's comments do not require reversal.

"Under California law, a prosecutor commits reversible misconduct if he or she makes use of 'deceptive or reprehensible methods' when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted.  (*People v. Strickland* (1974) 11 Cal.3d 946, 955.)" (*People v. Riggs* (2008) 44 Cal.4th 248, 298.)

We need not consider whether the prosecutor's comments were deceptive or reprehensible because, as we noted above with respect to the due process argument, the comments were not prejudicial.  In other words, it is not reasonably probable that defendant would have achieved a more favorable outcome absent the comments.  The prosecutor was entitled to comment on, and the jury to consider, Dr. O'Donohue's possible bias as a result of his pecuniary interest in finding problems with the MDIC interviews. Therefore, the additional insinuation that the conclusion was bought by the defense is not likely to have caused the jury to discount Dr. O'Donohue's testimony by itself.  Furthermore, although there were inconsistencies in the specifics of the victims' testimony, they were consistent in their allegations that defendant had abused them.

Accordingly, because there was no prejudice, the prosecutor's comment does not require reversal for prosecutorial misconduct.

(Exhibit 1 at *28-34.)

**B.    Analysis**

Initially, Petitioner did not object to the prosecutor's argument, and therefore he is

procedurally barred from raising that issue on a writ of habeas corpus.  The state court observed,

32

1   "Here, defendant did not object to the statements that he now asserts constituted prosecutorial

2   misconduct.  He has therefore forfeited review of the issue on appeal."  (Exhibit 1 at *31.)  "If the

3   state court rejects the claim on procedural grounds, the claim is barred in federal court unless one

4   of the exceptions to the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 82-84 [] (1977), applies."

5   *Richter*, 131 S.Ct. at 787.

6          In any event, the state court's finding that the prosecutor did not commit misconduct was

7   not contrary to, or an unreasonable application of, state court precedent.  Fairminded jurists could

8   find it at least debatable whether the Supreme Court has squarely established that any conduct by

9   a prosecutor can amount to a violation of the Constitution, unless that conduct itself violates some

10   specific guarantee articulated itself in the Bill of Rights or a specific holding of the Supreme

11   Court itself.  *See Donelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  With respect to the right to

12   a fair trial, the Supreme Court has stated, "The relevant question is whether the prosecutors'

13   comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due

14   process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), quoting *Donelly*, 416 U.S. 637.

15   Because the rule is very broad, the resulting analysis of the reasonableness of a state court's

16   application of the rule takes that generality into account.  "Evaluating whether a rule application

17   was unreasonable requires considering the rule's specificity.  The more general the rule, the more

18   leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough v.

19   Alvarado*, 541 U.S. 652, 664 (2004).  "[I]t is not an unreasonable application of clearly

20   established Federal law for a state court to decline to apply a specific legal rule that has not been

21   squarely established by this Court."  *Knowles*, 129 S.Ct. at 1413-14.  And there is nothing

22   specific about a claim that some act violated a generalized right to "due process."  *See Gray v.

23   Netherland*, 518 U.S. 152, 163 (1996) ("a general appeal to a constitutional guarantee as broad as

24   due process" will not present

25          Fairminded jurists could find room at least to debate whether Supreme Court precedent

26   squarely established a rule to the effect that a prosecutor's ability to argue fully to a jury the

27   factual inferences to be drawn from trial evidence is somehow less than the defendant's ability to

28   make such argument.  Rather, some fairminded jurist might find it at least debatable whether

33

1   Supreme Court precedent is consistent with a finding that it suffices (once a criminal defendant

2   has elected to have the facts determined by a jury) that the jury "remained free to exercised its

3   collective judgment to reject what it did not find trustworthy or plausible," *Cupp v. Naughten*,

4   414 U.S. 141, 149 (1973)—irrespective which party was the source.  For the foregoing reasons,

5   the state court's rejection of Petitioner's constitutional claim was reasonable.

6   **V.    THE STATE COURT REJECTION OF THE FAIR TRIAL CLAIM IS NOT SHOWN TO BE
        OBJECTIVELY UNREASONABLE**

7

8       Petitioner claimed on direct appeal that his right to a fair trial was violated when the trial

9   court did not allow him to introduce evidence of a "prior false complaint" of one of the victims

10  that had never proven to actually be false.  The state court found that Petitioner forfeited his

11  constitutional argument that he did not receive a fair trial because he did not raise that objection

12  in the trial court.  The state court further found that the trial court did not abuse its discretion in

13  precluding the admission of this evidence, and that the rules of evidence do not generally infringe

14  on a defendant's Constitutional rights.  The state court's decision was not contrary to Supreme

15  Court precedent.

16      **A.    The state court's ruling**

17      *Exclusion of Prior Complaint*

18      Defendant sought to introduce evidence that A. had made a prior false complaint that
        she had been molested.  When A. was three years old, she said that defendant had
19      molested her, and then she changed her story, saying that her brother had molested
        her.  The trial court excluded the evidence pursuant to Evidence Code section 352.
20      Defendant asserts that the exclusion of the evidence violated his constitutional fair
        trial rights.  We conclude that (1) defendant forfeited the issue of a violation of his
21      fair trial rights because he did not make that constitutional argument in the trial court
        and (2) the trial court did not abuse its discretion pursuant to Evidence Code section
22      352 and, therefore, did not violate defendant's fair trial rights.

23      A. *Background*

24      During trial, defendant's attorney sought permission from the court to introduce
        evidence concerning a false report of molestation by A.  He wanted to ask C. whether
25      A. had accused defendant of "lick[ing] [her] peepee."  C. took A. to the hospital and,
        there, she told C., "actually [defendant] didn't lick my peepee, [my brother] did it, but
26      [she] didn't want to get [him] in trouble."  Defendant's attorney expected that C.
        would testify that A. said defendant had molested her to protect her brother.  At the
27      time of the complaint, A. was three years old and her brother was four years old.  No
        action was taken on the complaint because it was considered false. The trial court
28      asked defendant's attorney how he knew it was a false report, and the attorney

                                            34

responded, "Because when she says [defendant] didn't do it, she is saying that it's a false report."

Acting pursuant to Evidence Code section 352, the trial court excluded the evidence, stating: "I am going to find that the prejudicial value -- I think the prejudicial effect of allowing this is immense in terms of confusion as particularly illustrated by the discussion we just had. [P] There is -- there is not an indication that this is a false report. If she is saying [defendant] licked my pee pee, and she is referring to [defendant], we don't know if that's false or not. [P] . . . [P] [A]t any rate, the consumption of time it would take with the jury would be considerable. [P] In turn, considering the probative value there is certainly enough ambiguity in what the witness has stated both here in court and also when confronted with prior statements that I think that adds very little additional probative value especially in light of not understanding whether it is a false report or a true report. [P] . . . [P] So it appears to me the prejudicial effect far outweighs any probative value."

B. *Analysis*

1. Forfeiture

Defendant failed to raise his current constitutional argument, that exclusion of the alleged prior false complaint evidence violated his constitutional fair trial rights. He therefore forfeited review of the issue on appeal.

2. Merits

Even assuming defendant did not forfeit review of this issue on appeal, it is without merit.

"Evidence Code [s]ection 352 provides: 'The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' '[A] trial court's exercise of discretion under Evidence Code section 352 will not be reversed on appeal absent a clear showing of abuse. [Citations.] It is also established that "'Evidence Code section 352 must bow to the due process right of a defendant to a fair trial and his right to present all relevant evidence of significant probative value to his defense.'" [Citations.] This does not mean that an unlimited inquiry may be made into collateral matters; the proffered evidence must have more than "'slight-relevancy" to the issues presented. [Citation.] . . . [Citation.] The proffered evidence must be of some competent, substantial and significant value. [Citations.]' (*People v. Northrop* (1982) 132 Cal.App.3d 1027, 1042, italics omitted, disapproved on other grounds in *People v. Smith* (1984) 35 Cal.3d 798, 807-808.) A trial court's exercise of discretion under section 352 'will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. [Citation.]' (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)" (*People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1457.) n5

n5  As we stated in *People v. Tidwell*, Evidence Code section 782, which applies to prior sexual activity of a victim, does not apply to circumstances in which there was a prior false complaint of rape or molestation. (163 Cal.App.4th at p. 1456.) We therefore need not discuss that section.

35

1    A false complaint of molestation is relevant to the victim's credibility.  However, the
     prior complaint is not relevant unless it is proved to be false.  (*People v. Tidwell*,
2    *supra*, 163 Cal.App.4th at p. 1457.)

3    Here, the trial court did not abuse its discretion. It is not readily apparent which
     version of A.'s complaint she made when she was three years old (whether she was
4    touched by defendant or by her brother) was the true version, if either was true.
     Trying to establish whether it was false that defendant had molested A. and true that
5    her brother touched her would have been confusing to the jury and tangential to the
     issues being tried.  The evidence may have been relevant to A.'s credibility if the jury
6    were to conclude that the complaint about defendant was false; however, what A. said
     when she was three had little relevance to her credibility when she was eight (at the
7    time of the crimes) or 12 (at the time of trial).  The evidence relating to credibility
     was weak and potentially confusing.  Under these circumstances, the trial court did
8    not abuse its discretion in excluding the evidence pursuant to Evidence Code section
     352.
9
     "Application of the ordinary rules of evidence generally does not impermissibly
10   infringe on a [] defendant's constitutional rights."  (*People v. Kraft* (2000) 23 Cal.4th
     978, 1035.)  Therefore, defendant's constitutional argument is without merit.
11

12   (Exhibit 1 at *23-8.)

13       **B.    Analysis**

14       Initially, this claimed is procedurally barred because the state court determined that it was

15   forfeited for lack of contemporaneous objection.  The appellate court noted that an objection on

16   the grounds of prosecutorial misconduct was never raised.  (Exhibit 1 at *26.)  "If the state court

17   rejects the claim on procedural grounds, the claim is barred in federal court unless one of the

18   exceptions to the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 82-84 [] (1977), applies."

19   *Richter*, 131 S.Ct. at 787.

20       In any event, it could also be denied on the merits.

21   '[A] defendant's right to present relevant evidence is not unlimited, but rather is
     subject to reasonable restrictions,' such as evidentiary and procedural rules.  *United*
22   *States v. Scheffer,* 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998).
     '[S]tate and federal rulemakers have broad latitude under the Constitution to establish
23   rules excluding evidence from criminal trials,' *id*., and the Supreme Court has
     indicated its approval of 'well-established rules of evidence [that] permit trial judges
24   to exclude evidence if its probative value is outweighed by certain other factors such
     as unfair prejudice, confusion of the issues, or potential to mislead the jury,' *Holmes*
25   *v. South Carolina*, 547 U.S. 319, 326, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006).
     Evidentiary rules do not violate a defendant's constitutional rights unless they
26   'infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate
     to the purposes they are designed to serve.'  *Id*. at 324 (alteration in original) (internal
27   quotation marks omitted); see also *Scheffer*, 523 U.S. at 315 (explaining that the
     exclusion of evidence pursuant to a state evidentiary rule is unconstitutional only
28   where it 'significantly undermined fundamental elements of the accused's defense').

                                                        36

1  *Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009).  Fairminded jurists could debate whether

2  California Evidence Code section 352 is the sort of well established rule of evidence providing

3  discretion to a trial judge that the Supreme Court has previously approved.  *Holmes*, 547 U.S. at

4  326.  Thus, Petitioner's claim must be denied.

5                                           **CONCLUSION**

6       For the foregoing reasons, Petitioner's petition for writ of habeas corpus should be denied.

7

8  Dated:  February 14, 2011                          Respectfully Submitted,

9                                                     KAMALA D. HARRIS
                                                      Attorney General of California
                                                      BRIAN G. SMILEY
10                                                    Supervising Deputy Attorney General

11

12                                                    /s/ *Heather S. Gimle*
13                                                    HEATHER S. GIMLE
                                                      Deputy Attorney General
14                                                    *Attorneys for Respondent*

15  drb
    SA2010303463
16  31199984.doc

17

18

19

20

21

22

23

24

25

26

27

28

37